IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| DESTINY AEINPOUR, individually;  and, DESTINYAEINPOUR and HOSEIN AEINPOUR, natural parents of minor son N.A. on behalf of minor son N.A., <br><br> *Plaintiffs*, <br><br> v. <br><br> DILLARD'S, INC., JOHN DOES 1-10, <br><br> *Defendants*. | No. 3:22-cv-00472 <br><br> **JURY DEMAND** |

**COMPLAINT**

COMES NOW, Plaintiffs Destiny Aeinpour, individually; and, Destiny Aeinpour and Hosein Aeinpour, natural parents of minor son N.A. on behalf of minor son N.A., and sues Defendant, DILLARDS, INC. and JOHN DOES 1-10, complaining as follows:

**I.**

**NATURE OF THE ACTION**

1. This is a civil-rights action sounding under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights act of 1991 ("Section 1981"), as well as applicable Florida tort law, for damages sustained by Destiny Aeinpour and her minor son N.A. when, inside DILLARD'S's Jacksonville department store on October 1, 2018, located at: Dillard's store in the St. Johns Town Center located at 4755 Town Crossing Drive, Jacksonville, Florida 32246. DILLARD'S store employees targeted Mrs. Aeinpour based on her race, accused her of

shoplifting, falsely imprisoned her and her two month old son N.A. for more than a half an hour, searched her person and possessions against her will including her stroller and diaper bag, accused her of stealing a dress, and otherwise subjected Mrs. Aeinpour and her two-month-old son to degrading and humiliating conduct with no reasonable or probable cause to suspect that she had or was in the process of committing a crime.  In so doing, DILLARD'S impaired the ability of Mrs. Aeinpour, a Black woman, to purchase goods offered by the store.  She alleges this was an instance of a historical, company-wide pattern of retail discrimination by DILLARD'S against nonwhite patrons of its stores.  She seeks compensatory and punitive damages, a court order prohibiting DILLARD'S from engaging in future discrimination toward non-white customers, and the award of all costs, expenses, and attorneys' fees accrued in prosecuting this action.

## II.

## PARTIES

2.    Plaintiff, Destiny Aeinpour, is an adult citizen of the United States, is a member of a racial minority as she is Black and is a resident of Florida.  Plaintiff N.A. is a minor citizen of the United States, is a member of a racial minority as he is Black and is a resident of Florida.

3.    The Defendant, DILLARD'S, INC., is an upscale corporate department-store chain headquartered in Little Rock, Arkansas.  It owns and operates hundreds of storefronts across the United States, including forty-two locations in Florida and three (3) in Jacksonville, Florida within the territorial boundaries of this Court's jurisdiction.  Defendants JOHN DOES 1-10 were employees and/or agents of Defendant DILLARDS and/or third persons and/or third-party security company that participated in the following incident by falsely accusing Plaintiff of shoplifting, racial profiling, and/or by aiding in her false imprisonment and unlawful restraint and/or by intentionally subjecting her to emotional distress.  The identities of the JOHN DOES 1-10 is

currently unknown, should their identities be revealed during discovery, Plaintiffs will update the Complaint.

4. The events described below occurred in the DILLARD'S storefront located at the St. Johns Town Center located at 4755 Town Crossing Drive, Jacksonville, Florida 32246. This location was owned and operated by DILLARD'S at all pertinent times.

### III.

### JURISDICTION AND VENUE

5. To the extent Plaintiffs pleads for relief under an Act of Congress, federal jurisdiction for this action is predicated on 28 U.S.C. §§ 1331 and 1343(a).

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate all state-law claims pendent to the federal claims that are the thrust and gravamen of this action.

7. This Court also has independent jurisdiction over the state-law claims under 28 U.S.C. § 1332(a)(1), predicated on diversity of citizenship. These claims are brought by an individual resident of FLORIDA against a corporation domiciled in ARKANSAS, seeking damages in excess of $75,000, exclusive of interest and costs.

8. Under 28 U.S.C. § 1391(b), venue for these claims is properly laid in the Middle District of Florida, within the territorial boundaries of which occurred all or the substantial part of the acts, events, or omissions pertinent and giving rise to this action.

### IV.

### GENERAL ALLEGATIONS

9. At all pertinent times, Mrs. Aeinpour was lawfully present on the premises of the DILLARD'S Jacksonville storefront (the "Department Store"). Because she had come to the

Department Store to shop for purchases, DILLARD'S owed her all duties owed to business invitees.

10. At all pertinent times, DILLARD'S employed sales-clerks, security guards, loss-prevention personnel, and other employees who acted on behalf of DILLARD'S; in furtherance of the interests of, and of their duties and obligations to, DILLARD'S; and in accordance with their supervision, training, and regular policies and practices of DILLARD'S.

11. On October 1, 2018, Mrs. Aeinpour and her son went to the DILLARDS at St. John's Town Center in Jacksonville to shop for a dress for her brother's wedding. The two entered the Department Store and began browsing the store.

12. As Mrs. Aeinpour browsed for items to purchase, she was pushing her two-month-old son, N.A. in his stroller with a brand-new maroon dress previously purchased from another store with its tags affixed containing the name of the store that was out and open and obvious on the stroller and was not concealed or hidden in a way to make her appear suspicious.

13. As Mrs. Aeinpour pushed her son through the store in a stroller, a DILLARD's agent and/or employee security guard, JOHN DOE 1, a White male in his 50's, approached her and her son publicly and in front of other customers and told her she needed to "stop" because she had DILLARDS merchandise that she was attempting to steal.

14. The only item that Mrs. Aeinpour had in her possession was her maroon dress that she previously purchased from another retailer.

15. In an attempt to prove her innocence to DILLARD's and its agent and/or employee, she told the security guard that the brand-new maroon dress was not a DILLARD's dress and showed him proof that the maroon dress and was purchased at another retailer and that she was

not shoplifting. She showed him the tag on the dress that read "Copper's Closet" the name of another store in the plaza.

16. Undeterred, the DILLARD's agent and/or employee continued to racially profile her and demanded that she go to a back room with him to be searched.

17. As Mrs. Aeinpour tried to call her husband this DILLARD's agent and/or employee immediately stated that she was being detained and that she could not call him falsely imprisoning her.

18. A DILLARDS store manager JOHNE DOE 2 approached Mrs. Aeinpour and the DILLARD's security guard, and she explained again that she did not have any stolen items. Again, she showed the tag on the dress that read "Copper's Closet" the name of another store in the plaza.

19. Undeterred, these DILLARD's agents and/or employees marched an innocent and humiliated Mrs. Aeinpour with her two-month-old son through its store to a back room in a walk of shame where she was held inside of a white tent-like structure, questioned, and had her belongings searched through by a third DILLARD's agent and/or employee JOHN DOE 3, including her son's stroller, his diaper bag, and Mrs. Aeinpour's belongings.

20. Mrs. Aeinpour continued to explain to them that the maroon dress in her possession *was not purchased at Dillard's, was not stolen, and that she did not steal anything*. Dillard's falsely imprisoned and detained both Destiny and her 2-month-old son for approximately thirty minutes.

21. Overwhelmed, innocent, and falsely imprisoned with her two-month-old son Mrs. Aeinpour began sobbing.

22. Eventually DILLARDS had to concede the maroon dress was not stolen, but their harassment and racial profiling did not stop there. While DILLARDS searched Mrs. Aeinpour's

belongings, JOHN DOE 4 a voice over the radio told the agents to now search her belongings for a blue dress. DILLARDS did not find a stolen blue dress nor any other stolen merchandise on Mrs. Aeinpour or her two-month-old son.

23. DILLARDS employees were finally forced to concede that Mrs. Aeinpour was innocent.

24. Mrs. Aeinpour was scared, crying, and hyperventilating and she was still not free to go and was brought into yet another room with her two-month-old son. A White male DILLARDS manager appeared and approached Mrs. Aeinpour and offered her a business card and a dress to "make up" for her and her son's approximate thirty-minute detention.

25. After being profiled, harassed, defamed, detained, and searched and seized for approximately 30 minutes, Mrs. Aeinpour and her two-month-old baby were finally allowed to leave the Dillard's detention center.

26. DILLARD'S employees had no reasonable cause to believe Mrs. Aeinpour had stolen, or were attempting to steal, any merchandise.

27. DILLARDS interfered with Mrs. Aeinpour's ability to pick out clothing to purchase, while she was being detained and questioned by DILLARD'S employees and/or agents.

28. The experience was profoundly humiliating for Mrs. Aeinpour, who was and is not a thief, and all the more so because of the brazen, reckless way that the entire interaction was conducted.

29. Having been publicly embarrassed, humiliated, falsely imprisoned by DILLARD'S employees, Mrs. Aeinpour feared for her safety and her son's safety and left the establishment.

30. DILLARD's treatment of and conduct toward Mrs. Aeinpour and her son was so outrageously hostile and offensive that it was not reasonably possible for her to remain in the

Department Store with her infant son. DILLARD'S constructively ejected Mrs. Aeinpour and her son from the premises of the Department Store and refused her service and an opportunity to make a purchase.

31. Upon information and belief, when DILLARD'S employees accosted Ms. Aeinpour and caused her to be falsely imprisoned and searched, DILLARD'S loss-prevention employees had not checked the Department Store's surveillance cameras for evidence that Ms. Aeinpour was shoplifting and/or they checked the surveillance cameras and found no evidence that she was stealing. DILLARD'S did not accuse any of its White customers of stealing or cause any of these persons to be detained, falsely imprisoned, or searched.

32. DILLARD's actions described above directly, legally, and proximately caused Mrs. Aeinpour to experience mental pain and suffering, sleeplessness, panic attacks, fright, anxiety, embarrassment, humiliation, and economic loss.

33. At the time of the events described above, DILLARD'S had previously been subject to lawsuits and other complaints for misconduct by its employees and agents toward Black customers that was similar to the misconduct alleged here. Upon information and belief, or all many of these complaints were based in fact and put DILLARD'S on notice that its non-White customers were being subject to race-based discrimination with unacceptable frequency.

34. DILLARD's has a long and well-documented history of discriminating against African Americans and racial profiling its customers. Most notably, in 2001 *60 Minutes* aired a special on DILLARD's revealing the prolific practiced of racial discrimination against customers. During the show several DILLARD's employees and security guards attested to having actual knowledge of the practice and uncovered that DILLARD's security guards actually murdered several Black customers during altercations. DILLARD's acknowledged its widespread pattern

and practice of racially discriminating against customers and stated that it was implementing training to reduce the use of unlawful force of its security guards against customers. However, DILLARD's has clearly failed to eliminate the practice of racially profiling its Black customers, as evidenced by the treatment of Mrs. Aeinpour and her son.

35. In 2001 a Dillard's in Missouri had to pay $5.6 million for racial discrimination against Black employees.

36. In 2002 Dillard's faced a lawsuit in Texas as it systemically targeted minority customers for surveillance, and its security personnel had caused the deaths of 6 customers; more than any other major retailer.

37. In 2003 DILLARD's was sued for racially profiling its customers at a store location in Kansas. During that incident, it was revealed that the store had a policy of having service staff and guards closely follow and monitor Black customers. Several employees acknowledged that DILLARD's had an unwritten policy of racial discrimination and heightened surveillance of Black customers.

38. In 2005 a Federal lawsuit was filed by eight Plaintiffs from Arkansas, Tennessee, and Florida, alleging that DILLARD's wrongfully accused customers of shoplifting because of their race, took them into detention centers or accused them on the sales floor. In the same year, DILLARD's was sued for dual pricing in hair salon- charging Black customers more for the same service.

39. In 2017 an African American musician and his entourage were racially profiled and thrown out of DILLARD's in Mississippi and were called the "n-word" by DILLARDS employees. One member of the entourage was pregnant, and the incident caused her to go into preterm labor. DILLARDS reached an out of court settlement with the plaintiffs.

40.     In October 2020 DILLARDS had to pay the EEOC $900,000.00 for racial discrimination against its employees.

41.     In November 2020 a Black woman, Artelia Phelps was falsely accused of shoplifting at a DILLARD'S in Chattanooga, Tennessee.  Ms. Phelps was accused of stealing the pants and sneakers that she owned and wore into the store.  Ms. Phelps recorded the incident. Ms. Phelps has a current lawsuit against DILLARDS alleging racial profiling and race discrimination in contract.

42.     In 2021 a DILLARD's department store in Phoenix, Arizona, falsely accused Billy Mitchell, a 17-year-old African American boy of using a counterfeit $100.00 bill when he attempted to pay for his clothing.  He filed a lawsuit alleging that he was a target of racial discrimination, that he was falsely arrested and imprisoned violating his civil rights.

43.     In March 2022 a Latina woman was falsely accused of stealing her own Louis Vuitton purse that she owned inside of a DILLARD's in Louisiana.  Her mother-in-law recorded the incident.

44.     NAACP officials have referred to DILLARDS as one of the most racist companies in America, and the NAACP has filed several lawsuits against DILLARDS alleging racial discrimination.

45.     All of the DILLARD'S employees' actions described above were performed within the scope of their respective employments by DILLARD'S.

46.     When DILLARD's employees falsely accused Plaintiffs of stealing, falsely imprisoned Plaintiffs, and invasively searched Mrs. Aeinpour and her son's belongings, they were acting at the direction of DILLARD'S employees and for the benefit of DILLARD's and thus as an actual or apparent agent of DILLARD's.

47. DILLARD'S is therefore vicariously liable for any and all tortious injury resulting from the actions of its employees and/or agents.

48. As such, by the above-mentioned actions and inactions, Defendants DILLARD's caused Plaintiffs Destiny Aeinpour and N.A. to suffer severe ongoing and permanent injuries. Plaintiffs suffered severe injuries and damages and serious bodily injury and resulting pain and suffering and psychological injuries and damages. Plaintiffs suffered severe injuries and damages, including but not limited to: Compensatory damages, Medical bills and expenses, Emotional pain and suffering, Psychological injuries and damages, Economic damages and loss of wages, Reasonable attorney's costs and fees incurred herein, Any and all such other relief as the Court deems just and equitable, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest.

## COUNT I
## RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981- AGAINST DILLARD'S

49. Plaintiffs reiterate and incorporate by reference the facts and allegations from the preceding paragraphs 1-48 as if fully set forth hereunder.

50. Mrs. Aeinpour and her infant son are members of a racial minority and federally protected class and are African American.

51. When Mrs. Aeinpour went to DILLARD'S with her infant son on October 1, 2018, she was seeking to purchase merchandise from DILLARD'S.

52. By causing Plaintiffs to be physically confined and restrained, DILLARD'S employees prevented Mrs. Aeinpour from making the purchases that she would otherwise have made during the period of her arrest and confinement.

53. By treating and causing Plaintiffs to be treated as criminals, and by causing Mrs. Aeinpour to be publicly humiliated in the middle of the Department Store, DILLARD'S constructively expelled Mrs. Aeinpour from DILLARD's, denied her the services that it regularly provides customers, and prevented her from making the purchases she otherwise would have made.

54. Although there were many white customers present at the Department Store throughout the course of events described above, DILLARD'S did not expressly or constructively deny any of these customers service or cause any of them to be subjected to conduct similar to what Mrs. Aeinpour experienced.

55. Through the conduct of its employees and agents described above, DILLARD'S treated Mrs. Aeinpour in a markedly hostile manner that any reasonable person would have found to be objectively discriminatory.

56. Upon information and belief, Mrs. Aeinpour would have been able to purchase merchandise from DILLARD'S, not been subjected to hostile conduct, and been afforded the same level of service and treatment as white DILLARD'S customers, but for the color of Mrs. Aeinpour's skin.

57. By unlawfully discriminating against Mrs. Aeinpour on the basis of her race and skin color, DILLARD'S violated Section 1981 and caused grievous injury to Mrs. Aeinpour's person, rights, and reputation.  She is entitled to monetary compensation for such injury. Plaintiffs suffered severe injuries and damages and serious bodily injury and resulting pain and suffering and psychological injuries and damages. Plaintiffs suffered severe injuries and damages, including but not limited to: Compensatory damages, Medical bills and expenses, Emotional pain and suffering, Psychological injuries and damages, Economic damages and loss of wages, Reasonable attorney's costs and fees incurred herein, Any and all such other relief as the Court deems just and

equitable, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest.

58. Furthermore, DILLARD'S employees and agents discriminated against Mrs. Aeinpour and her son with malice, a reckless and callous indifference toward her federally protected rights, or both. Mrs. Aeinpour and her son are therefore entitled to an award of punitive damages.

## COUNT II
## FALSE IMPRISONMENT- AGAINST DILLARD'S AND JOHN DOES 1-10

59. Plaintiffs reiterate and incorporate by reference the facts and allegations from the preceding paragraphs 1-48 as if fully set forth hereunder.

60. This action is brought pursuant to the laws of Florida for false imprisonment.

61. As described above, DILLARD'S and JOHN DOES 1-10 directed and otherwise caused Mrs. Aeinpour to be arrested, handcuffed, and kept in custody while a DILLARD employee searched her person and the labels on her clothing. At no point did Mrs. Aeinpour consent, expressly or effectively, to being publicly detained, restrained, or searched. DILLARD'S and JOHN DOES 1-10 thus forcibly restrained Mrs. Aeinpour and her two-month-old son to be confined, detained, and restrained against her will without lawful authority.

62. By causing Mrs. Aeinpour's confinement, detention, and restraint, DILLARD'S and JOHN DOES 1-10 compelled her to remain in the the Department Store long after she wanted to leave.

63. Furthermore, in so acting, DILLARD'S employees and agents and JOHN DOES 1-10's conduct was so reckless or wanting in care, that it constituted a conscious disregard or

indifference to the life, safety, or rights of Plaintiffs. The conduct was sufficiently egregious to entitle Plaintiffs to an award of punitive damages.

64. Plaintiffs suffered severe injuries and damages and serious bodily injury and resulting pain and suffering and psychological injuries and damages. Plaintiffs suffered severe injuries and damages, including but not limited to: Compensatory damages, Medical bills and expenses, Emotional pain and suffering, Psychological injuries and damages, Economic damages and loss of wages, Reasonable attorney's costs and fees incurred herein, Any and all such other relief as the Court deems just and equitable, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest.

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS- AGAINST DILLARDS AND JOHN DOES 1-10

65. Plaintiffs reiterate and incorporate by reference the facts and allegations from the preceding paragraphs 1-48 as if fully set forth hereunder.

66. This action is brought pursuant to the laws of Florida for intentional infliction of emotional distress.

67. DILLARD'S employees and agents and JOHN DOES 1-10 acted intentionally, recklessly, or both when they accused Mrs. Aeinpour of being a thief and caused her to be subjected to conduct described above.

68. Particularly given the total dearth of reasonable cause to suspect that Mrs. Aeinpour had stolen anything, her treatment by DILLARD'S, through its employees and agents, and JOHN DOES 1-10, was so outrageously atrocious as to be utterly intolerable in civilized society.

69. The extreme, outrageous conduct by DILLARD'S employees and agents and JOHN DOES 1-10 toward Mrs. Aeinpour was the sort of conduct capable of causing a reasonable person, normally constituted, to experience extreme and severe emotional distress.

70. DILLARD's employees and agents' and JOHN DOES 1-10's conduct directed toward Mrs. Aeinpour did in fact cause her extreme and severe emotional distress as a result of She is entitled to recover just compensation and damages. Plaintiffs suffered severe injuries and damages, including but not limited to: Compensatory damages, Medical bills and expenses, Emotional pain and suffering, Psychological injuries and damages, Economic damages and loss of wages,  Reasonable attorney's costs and fees incurred herein, Any and all such other relief as the Court deems just and equitable, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest.

71. Furthermore, in so acting, DILLARD'S employees and agents and JOHN DOES 1-10's conduct was so reckless or wanting in care, that it constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiffs.  The conduct was sufficiently egregious to entitle Plaintiffs to an award of punitive damages.

## COUNT IV
### NEGLIGENCE- PREMISE LIABILITY, GENERAL NEGLIGENCE, AND UNDERTAKER'S DOCTRINE- AGAINST DILLARD'S AND JOHN DOES 1-10

72. Plaintiffs reiterate and incorporate by reference the facts and allegations from the preceding paragraphs 1-48 as if fully set forth hereunder.

73. This action is brought pursuant to the laws of Florida for premise liability negligence.

74. DILLARD'S as owner/operator of the subject premise owed a duty to Plaintiffs as guests or business invitees to maintain the subject property in a reasonably safe condition, to refrain

from racial profiling, and to prevent persons from being falsely accused of crime, and to prevent the false imprisonment of persons on its property. JOHN DOES 1-10 had an obligation to implement the duties owed to Plaintiffs. DILLARDS also undertook a duty to implement racial sensitivity training and anti-bias training to its employees.

75. DILLARD'S and JOHN DOES 1-10 breached the duty owed to Plaintiffs in the following manners: failing to promulgate proper policies and procedures and/or failure to train and supervise its employees on how to respond to suspected shoplifters; failing to promulgate proper policies and procedures and/or failing to train and supervise employees with regard to laws requiring the department store not to engage in racial profiling and/or falsely accusing customers of criminal activity, failing to require its employees to review surveillance footage prior to detaining and falsely imprisoning guests and business invitees. Defendant DILLARDS and JOHN DOES 1-10 knew or should have known and had prior notice that DILLARDS employees frequently engaged in racial profiling, race discrimination in contract, and/or false accusing and falsely imprisoning persons falsely accused of shoplifting. DILLARDS and JOHN DOES 1-10 breached the duties owed to Plaintiffs by falsely accusing Plaintiffs of shoplifting, racially profiling Plaintiffs, and falsely imprisoning Plaintiffs. DILLARDS also undertook a duty to implement racial sensitivity training and anti-bias training to its employees but failed to do so in a reasonable manner.

76. DILLARD's breach of the duties owed to Plaintiffs actually and proximately caused them to suffer injuries and damages. Plaintiffs suffered severe injuries and damages, including but not limited to: Compensatory damages, Medical bills and expenses, Emotional pain and suffering, Psychological injuries and damages, Economic damages and loss of wages, Reasonable attorney's costs and fees incurred herein, Any and all such other relief as the Court

deems just and equitable, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest.

## COUNT V
## GROSS NEGLIGENCE AGAINST DILLARD'S and JOHN DOES 1-10

77. Plaintiffs reiterate and incorporate by reference the facts and allegations from the preceding paragraphs 1-48 as if fully set forth hereunder.

78. This action is brought pursuant to the laws of Florida for gross negligence.

79. DILLARD'S as owner/operator of the subject premise owed a duty to Plaintiffs as guests or business invitees to maintain the subject property in a reasonably safe condition, to refrain from racial profiling, and to prevent persons from being falsely accused of crime, and to prevent the false imprisonment of persons on its property. JOHN DOES 1-10 had an obligation to implement the duties owed to Plaintiffs.

80. DILLARD'S and JOHN DOES 1-10 breached the duty owed to Plaintiffs in the following manners: failing to promulgate proper policies and procedures and/or failure to train and supervise its employees on how to respond to suspected shoplifters; failing to promulgate proper policies and procedures and/or failing to train and supervise employees with regard to laws requiring the department store not to engage in racial profiling and/or falsely accusing customers of criminal activity, failing to require its employees to review surveillance footage prior to detaining and falsely imprisoning guests and business invitees. Defendant DILLARDS and JOHN DOES 1-10 knew or should have known and had prior notice that DILLARDS employees frequently engaged in racial profiling, race discrimination in contract, and/or false accusing and falsely imprisoning persons falsely accused of shoplifting. DILLARDS and JOHN DOES 1-10 breached the duties owed to Plaintiffs by falsely accusing Plaintiffs of shoplifting, racially profiling Plaintiffs, and falsely imprisoning Plaintiffs. In particular, when Plaintiff Mrs. Aeinpour

showed two DILLARDS employees that the tag on her dress which she had out in the open contained the name of another store they should have immediately allowed her to continue shopping and stopped accusing her of shoplifting, but instead, despite seeing the evidence that proved her innocence they proceeded to detain her and falsely imprison her.  Defendants' conduct was so reckless or wanting in care, that it constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiffs.

81.     DILLARD's breach of the duties owed to Plaintiffs actually and proximately caused them to suffer injuries and damages.  Plaintiffs suffered severe injuries and damages, including but not limited to: Compensatory damages, Medical bills and expenses, Emotional pain and suffering, Psychological injuries and damages, Economic damages and loss of wages, Reasonable attorney's costs and fees incurred herein, Any and all such other relief as the Court deems just and equitable, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest.

82.     Furthermore, in so acting, DILLARD'S employees and agents and JOHN DOES 1-10's conduct was so reckless or wanting in care, that it constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiffs. The conduct was sufficiently egregious to entitle Plaintiffs to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Destiny Aeinpour, individually, and Destiny Aeinpour and Hosein Aeinpour as natural parents of their minor son N.A., respectfully requests that this Court award the following damages against Defendants DILLARDS and JOHN DOES 1-10, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs, including but not limited to the following:

1. Compensatory damages,

2. Medical bills and expenses,

3. Emotional pain and suffering,

4. Psychological injuries and damages,

5. Economic damages and loss of wages,

6. Reasonable attorney's costs and fees incurred herein,

7. Any and all such other relief as the Court deems just and equitable.

## TRIAL BY JURY

WHEREFORE, Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: **April 27, 2022.**

Respectfully submitted,

  **/s/Jasmine Rand**
Jasmine Rand, Esquire
FBN: 0077047
**RAND LAW, L.L.C.**
2525 Ponce de Leon Blvd., Ste. 300
Miami, Florida 33134
(305) 906-6400 Telephone
(305) 503-9235 Facsimile
Email: jasminerand@gmail.com
*Attorney for Plaintiff*


  **/s/Benjamin Crump**
**Benjamin Crump, Esquire**
FBN: 0072583
122 South Calhoun Street
Tallahassee, Florida 32301
(850) 224-2020 Telephone
(850) 224-2021 Facsimile
benjamincrumpesq@gmail.com
*Attorney for Plaintiff*